Ex parte Genaro Cautiño Insúa; Heirs of Isabel Llera de Rucabado et al., Petitioners and Appellants.

No. 7176. Argued April 8, 1937.—Decided May 4, 1937.

*P. Amado Rivera, M. Rodríguez Alberty, F. Beiró Rovira, Pedro E. Anglade,* and *C. Domínguez Rubio* for appellants. *Tomás Bernardini Palés* for Julia, known as Julí, Luis Adalberto, and María Virginia Pérez Vázquez, represented by their mother Rosa Vázquez Vega, Mericia Pérez Vega, represented by her mother Viviana, and Felisa Pérez Vázquez. *Miguel Marcos Morales* for the Crédito y Ahorro Ponceño.

Mr. Justice Travieso delivered the opinion of the court.

José Pérez Llera died unmarried in the town of Cayey on May 5, 1932. He was survived by his mother, Doña Isabel Llera, and his descendants Graciela, Concepción, Luisa, otherwise known as Josefa, Horacio, Julia, Luis Adalberto, María Virginia, Mericia, and Marta Virgen, who were declared to be his acknowledged natural children by the District Court of Guayama.

Among other documents of the deceased, there appeared after his death a letter addressed to Genaro Cautiño Insúa, which literally transcribed reads as follows:

"Cayey, May 4, 1930.—Mr. Genaro Cautiño, Guayama.—My dearest friend (*compadre*): I wish I could be calm and explain to you everything that troubles me, but I am unable to do so on account of my nerves.—As you are the only person in whom I have all my hopes and confidence, before I die, I wish to intrust to your care my children and all my property, so that you may find a way to afford them protection and let nothing be done without your consent, for I well know your good heart and I am positively sure that you will not act against my will. In regard to the sale of the tobacco I talked to Don Antonio Longo and Don Félix Arostegui, both of whom will help you, I am sure, and the best possible results will be obtained. Distribute the remaining part, including houses, lands, cattle, etc., among my children but not by making delivery thereof to them but by providing them with a rent on which they can live, without ever being able to squander their property. Besides that, I want you to distribute the money I have in your possession ($70,000 more of less) in the following manner:—$25,000 for Luisa, $15,000 for Yuli, $10,000 for Adalberto, $10,000 for María Virginia, and

$10,000 for Mericia. This is in addition to what I now or hereafter may own. Adalberto will deliver to you all the books. If the tobacco is sold for less than $20, I do not think this will be necessary—$4,000 for the liquidation of the crop-loan contracts. If you have any doubt, consult Anito but never trust him, for he has no gratitude. In spite of all, after all the properties are liquidated, I want to leave him four or five hundred dollars, not for his sake but for the sake of his children, that they may buy a small house.—I want you to give $500 to each one of the persons named. They are: Julián Ramos, Josefina Nieves (this girl is from Toa Alta), Luis Brau, Sandiego Torres, Fruto López, Pepe Delvalle, and Elisa Malavé. Besides giving the $500 to the latter, transfer to her a property which her father has mortgaged to me, and give $100 to Doña César, the wife of Don Tano.—You will wonder at the decision which I have reached, but it is impossible for me to continue living a life in which only shamelessness and pillage are to be seen. Oftentimes I remember you and I pity you for being bound to continue dealing with so many thieves. Help your friend (*comadre*) and Bibina according to my means as long as they behave decently.—If I have forgotten anything, I leave it to your own judgment as wherever I may be, I will approve if anything you do.—Receive the most sincere embrace from your friend (*compadre*) who will never forget you.—Signed: Pepe. P. S. Enrique Mendoza has mortgaged to me a certain lot. Transfer the deed of said lot to my goddaughter, who is his daughter; I give it to her as a present.—If you have any difficulty in selling the tobacco, speak to Don Félix so that he may fully explain you the beginning of things. It all has happened to me due to the nervous condition which was caused to me by Mr. Gans from the very beginning.—Try to go with Don Félix to speak to Mr. Malla if he comes to Puerto Rico.—Correct.''

Thinking that said letter was the holographic will of the decedent, the addressee instituted in the District Court of Guayama proceeding No. 9832 for the protocolization of the holographic will of José Pérez Llera. An order was issued on May 20, 1932, declaring its identity to have been proved, and directing its protocolization in the office of Notary Tomás Bernardini de la Huerta.

By a deed of May 31, 1932, Genaro Cautiño Insúa accepted the office of executor, and by an order of June 2 of

the same year, the District Court of Guayama directed that the corresponding letters testamentary be issued to him.

On October 25, 1932, Cautiño, in his capacity as executor, with the intervention of the court, made an inventory of the estate, which showed that the assets amounted to $317,777.03 and the liabilities to $139,441.30.

The motion in which the present appeal originated was one for the appointment of a commissioner to make partition, filed in the District Court of Guayama, on September 4, 1934, by Graciela Pérez Torres de Meléndez, Angel Luis Pérez, represented by his mother Julia Nazario, Concepción Pérez Vázquez, Marta Virgen Pérez Alicea, and the heirs of Isabel Llera de Rucabado. The death of José Pérez Llera was alleged in said motion, and the letter addressed to Genaro Cautiño Insúa, *supra,* was literally transcribed; some statements were made, which seemingly purported to attack said letter as the holographic will of the deceased, to wit: first, that the latter signed "Pepe" and not his complete name; second, that he omitted to designate his mother, Doña Isabel Llera de Rucabado, as an heir; third, that he did not mention his children, and deprived them of their inheritance share in full ownership; and, fourth, that he did not provide for the appointment of an executor or a commissioner to make partition; that despite this last objection, Genaro Cautiño accepted the office of executor, managed to have letters testamentary issued in his favor, and proceeded to the making of an inventory, with the intervention of the court, but without summoning either the children of the decedent or their respective mothers; that the inventory was filed on October 25, 1932, and it shows a net balance of $178,335.73 and contains a group of creditors, who are listed, and a matured claim against the partnership José González & Co., *S. en C.,* (of which Genaro Cautiño Insúa is managing partner), in favor of José Pérez Llera for the sum of $60,000, which together with accrued interest thereon amounts to $70,000,

whereas the amount which, according to the will, José Pérez Llera had in the hands of Genaro Cautiño, amounted to $70,000, and no provision was made for interest; that Horacio Pérez Vázquez, one of the acknowledged natural children, had died, and his heir and son, Angel Luis Pérez, appeared in his name; that among the debts of the decedent there was one secured by collateral to the Crédito y Ahorro Ponceño which, in August, 1932, amounted to $140,349, and on July 31, 1934, to $68,130.58; that on the date of the petition, there was pending before the district court a claim of The People of Puerto Rico for taxes due up to July 29, 1933, amounting to $10,633.46, and was sought therein that payment be ordered or leave to attach granted; that according to the inventory made, the taxes owed on the date of the filing of the claim amounted to $4,216.67 and hence there is a balance of $6,000 against the estate; that no provision has been made in regard to the petitions of Concepción Pérez Vázquez, María Encarnación Vázquez, and Graciela Pérez Meléndez, acknowledged natural daughters of the deceased, for temporary maintenance, for which reason they are receiving nothing from the administrator, whereas "Rosa Velázquez Vega, on behalf of her minor children Julia, Adalberto, and María Virginia, filed a motion for an increase in the allowance from $50 to $60 monthly," and the same was granted by an order of August 28, 1933; that notice of said motion to increase the allowance "was only served on the attorney for the administrator, Mr. Bernardini de la Huerta, and has all the traces of having been drafted by said attorney"; that payments have also been made to Bibina and Luisa Vega without order of the court; that the persons who received those payments were insolvent and their rights in the inheritance have not yet been determined; that the sum of $80,000, more or less, owed by the partnership José González & Co., *S. en C.,* had not been paid to the estate notwithstanding that the same had become due, and that if it had

been paid, it would have been possible to pay the indebtedness to the Crédito y Ahorro Ponceño, amounting on July 31, 1934 to $68,130.58; that on the assumption that the $70,000 mentioned by the testator would have to be distributed as he provided in the will, the balance of $7,788.65 (*sic*) could and should have been paid by the said partnership to apply to the payment of taxes on which interest was charged at the rate of 12 per cent annually; that on April 3, 1934, Concepción Pérez Vázquez filed a petition for the appointment of a commissioner which, as we have already said, was denied, and which was opposed by the administrator, through his attorney, Tomás Bernardini de la Huerta, Esq., and by Attorney Tomás Bernardini Palés in representation of the heirs of Luisa, Yuli, Luis Adalberto, María Virginia, and Mericia Pérez, acknowledged natural children of the deceased, who were the persons receiving $60.00 monthly.

It was also expressly alleged that considerable time would pass before the administration pays the debts, due to the fact that the properties were not producing any rents; that only a number of creditors, who are listed, have collected their claims; that the delay in the partition of the estate has resulted in the filing of numerous suits which entail expenses to the administration; that the fact that the decedent stated that the $70,000 in the hands of Cautiño were to be distributed in the manner provided in the will, is not an obstacle to the appointment of a commissioner to make partition, as the rights of the creditors have preference over those of the heirs. Lastly, examples were set forth illustrating a hypothetic allegation to the effect that whether "the death of Pérez Llera be considered to have taken place under a will or, as regards his mother, without a will, we will concede, only for the purposes of this petition, that section 768 of the Civil Code in force is applicable to the partition of the estate of the decedent."

The petition ended with the prayer that in view of the foregoing facts, of section 67 of the Special Legal Proceedings Act, and of *Labarthe et al.* v. *Newman*, 23 P.R.R. 640, a commissioner be appointed to make partition.

The administrator objected to such appointment on the following grounds:

*First:* That the inheritance is in process of administration, "the admin'strator being at present executing orders relating to the sale of properties for making payments to the creditors effecting arrangements to proceed to the payment of the debts which according to the inventory, exists against the estate.

*Second:* That the appointment of a commissioner would be tantamount to the partition of the inheritance without first paying the creditors to whom the law reserves the right to object until they are paid or the amount of their claims is secured, the power to apply for such an appo'ntment being vested exclusively in the person of the judicial administrator. He distingu'shes the case of *Labarthe et al.* v. *Newman*, 23 P.R.R. 640.

*Third:* That the testator conferred upon him full power in the will to div:de the inheritance, thus vesting him with the character of a commissioner to make partition.

A hearing was held. On March 20, 1935, the court entered an order denying the petition for the appointment of a commissioner, and thereupon the persons aggrieved by that order took an appeal. They have assigned as an only error of the lower court "its failure to grant the motion for the appointment of a commissioner basing its ruling, not on proved facts showing that such an appointment should not be made according to the law or any legal provision, but on conjectures, appreciations unsupported by the facts, and an erroneous interpretation of certain words of the testator."

It would be a wearisome task to sum up the documentary and parol evidence introduced. The transcript of the evidence alone consists of 399 pages. In spite of the great size of the record, neither counsel for the appellants nor the attorney for the appellee have appeared at the hearing of the

appeal before this court. The latter did not file any brief and that of the former is very deficient.

A very careful study of all the evidence introduced has convinced us that the order of the district court is erroneous. Perhaps its marked desire to respect as much as possible the directions of the decedent as to the distribution of the $70,000 held by the partnership Successors of José González & Co., *S. en C.*, led it to error. Its opinion filed reads, in part, as follows:

"In our order of November 23, 1933, we said the following:

" 'It is generally known that due to the world depression in the field of business, the value of both personal and real property has greatly d'minished and hence it is very difficult at present to get a just and equitable price for the property which is sought to be sold. This be'ng so, it becomes very difficult and almost impossible to assert that if the assets of the estate are sold at a given time, they might bring in an amount sufficient to duly cover the debts of the inheritance, as well as the expenses of administration.'

"At present the situation has not greatly changed in this respect. . . .

" *     *     *     *     *     *     *

"The petitioners in their mot'on lay great stress on the indebtedness owed to the estate by the partnership Successors of José González & Co., *S. en C.*, it being stated that said sums be paid and brought into the administration. But. if we examine the will of the deceased, we will see that it is stated therein that:

" '. . . . . I want you to distribute the money I have in your possession ($70,000 more or less) in the following manner:—$25,000 for Luisa, $15,000 for Yuli, $10,000 for Adalberto, $10,000 for María Virginia, and $10,000 for Mericia. This is in addition to what I now or hereafter may own. . . . .'

"The foregoing testamentary provision should, in our opinion, be carried into effect, and the sale of the other property of the estate should be resorted to in the first place for the payment of the debts and expenses of the administration, and only in case it were insufficient for such payment, should the amounts in the possession of the partnership Succrs. of José González & Co., *S. en C.* be used, since the same have been set aside by the testator for a specific purpose, such as the payment to the heirs named in said provision."

■ Manresa has said that the right of the creditors has preference over that of the heirs, and that paying comes before inheriting. Among the important claims against the estate there is that of the Crédito y Ahorro Ponceño, which on July 31, 1934, amounted to $68,130.58. As long as there is no settlement of the total amount of that debt as well as of others to which we have made no reference, the heirs have no preferential right to any portion of the inheritance. They are entitled, however, to a division thereof, as prescribed by section 1005 and 1006 of our Civil Code, 1930 ed., provided that the rights of creditors be safeguarded by payment or security in the manner provided for by section 1035 of the same code.

■ Considering that some heirs wish to have a division of the estate, and that there exists, according to the inventory submitted by the executor and administrator, a claim against Successors of José González & Co., *S. en C.*, amounting on October 25, 1932, to $70,706.65, is there any justification in waiting for a better opportunity to sell other properties at a better price, where there is no need to wait, and least of all to sell them now at a sacrifice? The lower court itself is greatly in doubt as to whether "the assets of the estate when sold at a given time would bring in an amount sufficient to duly cover the debts of the inheritance as well at the expenses of administration." It said so in November 1933, and in March 1935, it again repeated its statement. Any attempt to predict whether it shall be compelled to make the same or a similar assertion within some years hence would be to go into the realm of speculation.

Meanwhile, under color of respecting a testamentary provision which there is no need to respect in the circumstances of this case, because there are creditors holding claims that are due and uncollected, some heirs are obliged, against their express will, to allow the estate to remain undivided. As we have seen, they can not be compelled according to law

to remain in the indivision. There is another circumstance. While some of the acknowledged natural children have been receiving monthly allowances, other children with equal rights do not receive anything despite their having presented claims to that effect.

The grounds of opposition to the present petition which were adduced by the administrator can not be regarded as sufficient, in our opinion, to prevent the appointment of a commissioner to make partition. As to the first of such grounds, it is within his power to demand from Succrs. of José González & Co., *S. en C.*, the payment of the sum owed to the estate; the same is a matured and enforceable claim, the proceeds of which would be sufficient to pay the debt to the Crédito y Ahorro Ponceño. However, the administrator tells us in his motion of opposition that the appointment of a commissioner would be improper because he is "at present executing orders *relating to the sale of properties* for the payment of creditors and making arrangements to proceed to pay the claims which according to the inventory, exist against the estate." That is, the administrator is doing just what the court and he himself deem to be improper and prejudicial to the interest of the heirs.

If the sale of those properties should be made at the ridiculous prices now prevailing, according to the testimony of Mr. Cautiño, then the proceeds of such properties would hardly cover the debts against the estate. Resort must then be had to the amount owed by Succrs. of José González & Co., *S. en C.*, in order to pay the lawful portions of the decedent's mother and of all his children. The directions of the decedent could not be carried into effect.

As regards the second ground of opposition, section 67 of the Special Legal Proceedings Act provides that "whenever any executor or administrator . . . shall have paid *or shall have in hand a sufficient amount for the payment of the debts and expenses of administration,* . . . he must ap-

ply . . . for the appointment of a commissioner . . . . ''. It is clearly inferred therefrom that if the administrator has in hand a sufficient amount to pay, as in the instant case, the heirs can apply for the appointment of a commissioner to make partition (*Labarthe et al.* v. *Newman*, 23 P.R.R. 640, is directly in point), even though all the debts of the estate are still unpaid. That would not be tantamount, as contended by the administrator, to a partition of the inheritance without first paying the claims of the creditors.

Furthermore, the applicants introduced in evidence the consent to the partition of approximately ten creditors. Neither the Crédito y Ahorro Ponceño nor the Government of Puerto Rico, the two creditors holding the largest claims, have appeared for the purpose of objecting to the appointment of a commissioner, notwithstanding the right conferred upon them by section 1035 of the Civil Code. Therefore, why invoke against the petitioners' rights which belong to the creditors and which the latter did not deem advisable to enforce?

■ As to the third ground of opposition, the instructions which the decedent gave to Mr. Cautiño with respect to the division of his estate, were confined to the $70,000, the amount of the debt of Succrs. of José González & Co., *S. en C.*, and did cover the whole of the estate. It does not seem to us that they operated to vest in him the office of commissioner to make partition.

In order that the will of the testator may be carried into effect without further delay, the order appealed from must be reversed and the case remanded to the court *a quo* with directions to grant the petition of the appellants and to proceed to the appointment of a commissioner in accordance with the law and the applicable decisions, the appointment to be made in favor of a person who has no interest whatsoever in the inheritance, and who is neither a creditor nor a debtor of the estate.